## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MIRTA ELIZABETH VASQUEZ ROMERO** | |
| *Petitioner-Plaintiff*, | |
| **v.** | **Case No: 8:24-CV-556** |
| **UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES;** | |
| **UR MENDOZA JADDOU, in her official capacity as Director of United States Citizenship and Immigration Services,** | |
| **TED H. KIM, in his official capacity as the Associate Director of Refugee, Asylum, and International Operations Directorate of USCIS,** | **CIVIL COMPLAINT AND PETITION FOR WRIT OF MANDAMUS** |
| **ANTONIO DONIS, in his official capacity as Director of the Arlington Asylum Office,** | |
| *Respondent-Defendants*. | |

## CIVIL COMPLAINT AND PETITION FOR WRIT OF MANDAMUS

1.      This is a civil action brought by Plaintiff-Petitioner Mirta Vasquez Romero (hereafter "Petitioner" or "Ms. Vasquez") to compel Respondent-Defendant officers of the United States to adjudicate Ms. Vasquez's Form I-589 Application for Asylum without further delay under the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.* Ms. Vasquez's application has been pending with U.S. Citizenship and Immigration Services (hereafter "USCIS") since on or about August 9, 2016—for over seven years. Adjudication of the Application, beginning with the scheduling of an asylum interview, is a nondiscretionary ministerial duty owed to Ms. Vasquez. She has no other adequate remedy to obtain that right other than through this Petition.

1

2.      Furthermore, USCIS's implementation of a "Last-in, first-out" policy has left Ms. Vasquez's and hundreds of thousands of other affirmative asylum applications languishing in a backlog since its inception eight years ago, with no indication that these applications will ever be adjudicated.  Under the policy, the most recent affirmative asylum applications are given priority while older applications will only be adjudicated after USCIS has worked through newly submitted applications.  As a result, Ms. Vasquez is faced with an uncertain legal status and an inability to plan for her future in the United States while she waits for the government's determination of her asylum claim.  USCIS's actions in developing and implementing the policy violate the Administrative Procedure Act's ("APA") prohibition on agency action that is arbitrary, capricious, or otherwise not in in accordance with law.  Moreover, the failure to timely adjudicate Ms. Vasquez's Application violates the APA's prohibition on government action that is unlawfully withheld or unreasonably delayed.  Ms. Vasquez also has a right to relief under the Mandamus Act.

3.      Therefore, Ms. Vasquez brings this Petition seeking declaratory and injunctive relief from this Court to end these violations and their resulting harms.

## JURISDICTION AND VENUE

4.      This civil action arises under the laws and treaties of the United States, including 1951 Convention and 1967 Protocol Relating to the Status of Refugees, the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1101 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. 555(b), 5 U.S.C. § 701 *et seq.* Therefore, this Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal questions).  In suits brought under the APA, the federal government has waived its sovereign immunity pursuant to 5 U.S.C. § 702.  Further, this action is also brought pursuant to The Mandamus Act, 28 U.S.C. § 1361, under which "...district

courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff" and the All Writs Act, 28 U.S.C. § 1651, which grants this Court the authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions[.]"

5.      Venue is proper in the District of Maryland under 28 U.S.C. § 1391(e)(1) because this is an action against officers and agencies of the United States in their official capacities, brought in the district where the agency's headquarters is located and where "a substantial part of the events or omissions giving rise to the claim occurred[.]"

6.      Specifically, USCIS Headquarters is located in Camp Springs, Maryland.  Second, the "Last-in, first-out" policy which is the subject of this litigation is a product of USCIS Headquarters, located in Maryland.  Finally, upon information and belief, cases involving Guatemala such as Ms. Vasquez's are being delayed based on review and decision-making at USCIS Headquarters.  Therefore, venue in this case is more appropriate in the District of Maryland under 28 U.S.C. § 1391(e)(1).

## PARTIES

7.      Petitioner Mirta Vasquez Romero is a native and citizen of Guatemala.  She is in the United States.  After her last arrival in the United States in June 2003, has remained in the U.S. since that entry.  On or about August 9, 2016, she filed an application for asylum.  Upon information and belief, that application remains pending before Respondent United States Citizenship and Immigration Services ("USCIS") at the Arlington Asylum Office.

8.      The USCIS is the Respondent federal agency charged with, *inter alia*, adjudicating applications for asylum.  It has the obligation to adjudicate Petitioner's Application.

9.      Respondent Ur Mendoza Jaddou is sued in her official capacity as the Acting Director of USCIS, a bureau of the U.S. Department of Homeland Security ("DHS").   In this capacity, she has responsibility for the administration of the immigration laws pursuant to 6 U.S.C. § 271.  Moreover, she is the official responsible for implementing the "Last-in, first-out" policy which has led to a backlog of hundreds of thousands of asylum cases, including Petitioner's case.

10.     Respondent Ted H. Kim is sued in his official capacity as the Associate Director of Refugee, Asylum, and International Operations (RAIO) Directorate of USCIS.   RAIO is responsible for conducting protection screenings and adjudicating asylum and refugee applications and oversees each of the eleven asylum offices throughout the United States.

11.     Respondent Antonio Donis is sued in his official capacity as the Director of the Arlington Asylum Office of USCIS, a bureau of the DHS. In this capacity, he has responsibility for the adjudication of affirmative applications for asylum filed by noncitizen applicants, including Petitioner's Application.

**ASYLUM PROCESS**

12.     Federal immigration law allows persons who are physically present in the United States to apply for asylum, withholding of removal and protection under the Convention against Torture.  *See generally* 8 U.S.C. § 1158.

13.     To prevail on an asylum claim, an applicant must demonstrate that she cannot return to her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A); *see also* 8 U.S.C. § 1158(b)(1)(A).

14.     After an asylum case is filed, the proposed beneficiary submits biometric information, and a background check is completed.  The asylum applicant is then scheduled for an

interview by the responsible asylum office.  After the interview, the asylum office renders a decision on whether the applicant has a credible fear of persecution and asylum is accordingly granted or denied.

15.     Those who are granted asylum in the United States may not be removed to the country in which they face persecution.  8 U.S.C. § 1158(c)(1)(A).  After holding the status of asylee for at least one year, asylees may adjust their status to that of a lawful permanent resident.  8 U.S.C. § 1159(b).  After holding lawful permanent resident status for five years, an asylee may apply for citizenship.  8 U.S.C. § 1427(a).

16.     On January 26, 2018, USCIS announced that it was reformulating its procedures for processing affirmative asylum applications.  *See* USCIS Affirmative Asylum Interview Scheduling Page, appended as Exhibit A.  Under the new procedure, the priority categories are as follows: rescheduled asylum interviews are given priority; applications that have been pending for fewer than 21 days are given second priority; and all other pending applications are given third priority and "will be scheduled for interviews starting with newer filings and working back toward older filings." *Id*.  Thus, Ms. Vasquez's application falls into the third priority category.  The new preference system is known as "Last-in, first-out" (hereinafter "LIFO"), as the most recent applications are scheduled for interviews with higher priority.

17.     Although the LIFO policy was implemented under the justification that it would reduce the asylum backlog, the affirmative asylum backlog has only continued to grow since 2018.  In the USCIS Ombudsman's June 30, 2022 Annual Report to Congress,[1] it was disclosed that over 430,000 asylum cases await adjudication.

---

[1]     CITIZENSHIP AND IMMIGRATION SERVICES OMBUDSMAN, *Annual Report 2022*, at ix (June 30, 2022), *available at* https://www.dhs.gov/news/2022/07/01/citizenship-and-immigration-services-ombudsman-submits-annual-report-congress ("The asylum backlog has grown to

18.     At the time the policy was implemented in fiscal year (FY) 2018 (October 2017 to September 2018), the number of pending asylum applications increased from 307,635 at the end of the first quarter of the FY to 319,202 pending at the end of the FY. *See* USCIS Number of Service-wide Forms by Fiscal Year 2018, appended as Exhibit B.  Due to the LIFO policy, the 106,041 new applications that were received were given priority, even over cases which have already been pending for several years.

19.     Upon information and belief, because USCIS was not able to adjudicate all of the new applications filed after the LIFO policy was implemented, very few applications from before FY 2018 were scheduled for interviews or adjudicated.

20.     Upon information and belief, this process—prioritizing new applications, failing to adjudicate all the new applications, and rarely getting to applications made prior to the implementation of the LIFO policy—has resulted in an ever-growing backlog of 430,000 affirmative asylum applications pending adjudication and the unreasonably prolonged delay of hundreds of thousands of those applicants who filed prior to December 2018.

21.     Given the continued influx of new affirmative asylum applications, it is highly likely that third priority applications like Ms. Vasquez's will languish in the backlog created by the LIFO policy for many years.  If USCIS continues to be unable to process even the incoming applications in any given year, very few—if any—previous applications will even be scheduled for interviews or ultimately adjudicated.  It is even likely that, as a result of the LIFO policy, Ms. Vasquez's application would never be adjudicated, thereby delaying Ms. Vasquez's potential asylee status, subsequent residency, and eventual naturalization.

---

more than 430,000 pending cases, with devastating impacts on asylum seekers and their family members.  USCIS' existing asylum system cannot meaningfully reduce its backlog, let alone keep pace with incoming applications.").

## STATEMENT OF FACTS

22.     Ms. Vasquez is a 45-year-old citizen of Guatemala, who resides in the United States. She last entered the U.S. on or about June 2003. Due to her fear of returning to Guatemala, Ms. Vasquez submitted an affirmative application for asylum on August 9, 2016.

23.     Ms. Vasquez has claimed asylum in the United States based on past persecution and a well-founded fear of future persecution in Guatemala on account of her membership in particular social groups.

24.     Specifically, on or about August 9, 2016, Ms. Vasquez submitted a Form I-589 Application for Asylum, Withholding of Removal, and Protection Under the Convention Against Torture to USCIS.

25.     Since filing her application in or around August 2016, no interview has been scheduled by USCIS.

26.     Despite having filed her application more than seven years ago, USCIS has not scheduled Ms. Vasquez for an interview, rendered a decision, or taken any other action on the pending application.

27.     Due to the LIFO policy, there is not even an estimate of when she may receive a decision on her application, and based on recent application numbers, her application is likely to be delayed indefinitely.

28.     The egregious delay in adjudication of Ms. Vasquez's asylum application has negatively impacted Ms. Vasquez's health, welfare, and ability to plan for her future. Ms. Vasquez's uncertain immigration status as an asylum-seeker has prevented her from establishing a life in the United States and from receiving certain benefits as an asylee.

29.     Specifically, Ms. Vasquez's mental health has been impacted by the uncertainty of her immigration status. As an asylum-seeker, she lives in fear that she will be forced to return to Guatemala.

30.     Moreover, as noted above, the process of obtaining permanent residence and an eventual application for naturalization are precluded until Ms. Vasquez's asylum application is approved.  Thus, even if her application were granted today, she would still have been prejudiced and suffered irreparable harm by USCIS's delay.  Fist, she has been unable to travel outside the United States.  *See Singh v. Still*, 470 F.Supp.2d 1064, 1070 (N.D.Cal. 2007).  Moreover, Ms. Vasquez has had to repeatedly file applications for work authorization, including paying the required fees, which would have been unnecessary if her asylum application (and her permanent residency application one year later) had been timely scheduled for an interview and adjudicated.

31.     Notably, without a final decision on an application for asylum, those seeking protection also have difficulty finding work and are ineligible for certain medical and insurance protections.

32.     Finally, USCIS's unreasonable delay in adjudicating Ms. Vasquez's application has delayed any eventual attempt to become a U.S. citizen, as a permanent resident must wait five years from the date of her adjustment before applying to naturalize.  *See* 8 U.S.C. § 1427(a); *see e.g.*, *Ngwanyia v. Ashcroft*, 302 F.Supp.2d 1076, 1079 (D.Minn. 2004) ("Because lawful-permanent resident status is a prerequisite for naturalization, any delay in adjustment inevitably postpones an asylee's ability to apply for citizenship.").  Finally, as outlined below, this also violates US treaty obligations under Article 34 of the 1951 Convention Relating to the Status of Refugees, 28 July 1951, 189 U.N.T.S. 137 [hereinafter "1951 Convention"].  Article 34 states "[t]he Contracting States shall as far as possible facilitate the assimilation and naturalization of

refugees. They shall in particular make every effort to expedite naturalization proceedings and to reduce as far as possible the charges and costs of such proceedings."

33.     These are exactly the reasons why the INA prescribes that absent "extraordinary circumstances," initial asylum interviews "shall commence" within 45 days of filing and asylum matters "shall be completed" within 180 days after the filing of the application.  8 USC § 1158(d)(5)(A)(ii)(iii).

34.     Ms. Vasquez seeks that USCIS schedule her for an interview and adjudicate her pending asylum application so that—whether she is granted or denied asylum on the merits of her claim—she can begin to plan for her future.

35.     USCIS has not informed Ms. Vasquez of any security concerns or any other reasons that might even partially justify the delay in adjudication.  Ms. Vasquez poses no security threat whatsoever as she has no criminal record in or outside the United States.  Ms. Vasquez has been an exemplary member of the community for the entire time she has lived and worked in the United States.

## CAUSES OF ACTION

**First Claim for Relief: The 1951 Convention and 1967 Protocol on the Status of Refugees**

***Respondents' failure to adjudicate Petitioner's asylum application within a reasonable time violates Article 34 of the 1951 Convention, Ratified by Extension in the 1967 Protocol Relating to the Status of Refugees***

36.     Petitioner realleges and incorporates by reference paragraphs 1 through 35 of this Complaint as if fully stated herein.

37.     In addition to the U.S. Constitution, treaties signed by the President and ratified by the Senate are the "supreme law of the land."  U.S. CONST. Art. VI § 6.

38.     The United States is not a signatory to the 1951 Convention. However, on October 4, 1968, the Senate ratified the 1967 Protocol Relating to the Status of Refugees, Jan. 31, 1967 606 U.N.T.S. 267 [hereinafter "1967 Protocol"].  Article I § 1 of the 1967 Protocol adopts Articles 2 through Article 34 of the 1951 Convention, merely extending the protections of the 1951 Convention to cover those persons who became refugees after 1951.  Therefore, the 1951 Convention, by operation of Senate ratification of the 1967 Protocol, is the law of the land in the United States.

39.     Relevant here, Article 34 of the 1951 Convention states "[t]he Contracting States shall as far as possible facilitate the assimilation and naturalization of refugees. They shall in particular *make every effort to expedite* naturalization proceedings and to reduce as far as possible the charges and costs of such proceedings." (emphasis added).

40.     In violation of the treaty, the LIFO policy for processing asylum applications ensures that cases like Ms. Vasquez's, which have been delayed nearly a decade, may never be adjudicated.

41.     The United States' obligation to timely adjudicate asylum applications is not merely a question of government processing, but is intended to ensure that refugees who flee to the United States can assimilate and become citizens.

42.     Relevant here, once an application is granted, an asylee or refugee need only wait one year to apply for permanent residence, *see* 8 U.S.C. § 1159(b), and then wait five years to apply for naturalization, *see* 8 U.S.C. § 1427(a).  With this statutory framework, the seven-year delay to adjudicate Ms. Vasquez's asylum application—only the first step in the process of "assimilation and naturalization of refugees"—falls well outside the expeditious process contemplated by Article 34.  And, given that Ms. Vasquez has been waiting longer to have her

asylum application adjudicated than some applicants would have to wait to complete the entire process and naturalize, particularly with the prioritization of new applications, it cannot be said that USCIS is making "every effort" to adjudicate her pending application for asylum under Article 34.

43.     Therefore, by implementing the LIFO policy and indefinitely delaying applicants for asylum, Respondents are in violation of Article 34 of the 1951 Convention.

**Second Claim for Relief: Administrative Procedure Act**

***Respondents' failure to adjudicate Petitioner's asylum application within a reasonable time violates the Administrative Procedure Act's prohibition against government action which is unlawfully withheld or unreasonably delayed***

44.     Petitioner realleges and incorporates by reference paragraphs 1 through 43 of this Complaint as if fully stated herein.

45.     The seven-year delay in adjudicating Ms. Vasquez's asylum application is unreasonable *per se*.

46.     The seven-year delay in adjudicating Ms. Vasquez's asylum application amounts to an unreasonable delay under § 706(1) of the APA.

47.     The APA provides a remedy to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(l).

48.     "Agency action" refers to a discrete action and includes the failure to act. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (citing 5 U.S.C. § 704) (holding that a plaintiff must allege "that an agency failed to take a *discrete* agency action that it is *required to take*") (emphasis added).

49.     The APA further provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives, and *within a reasonable time*, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b) (emphasis added).

50.     Respondents have a statutory, nondiscretionary duty to adjudicate Petitioner's application for asylum.  Under the INA, the Attorney General "shall establish a procedure for the consideration of asylum applications."  8 USC § 1158(d)(1).  Moreover, in the absence of extraordinary circumstances, initial asylum interviews "shall commence" within 45 days of filing and asylum matters "shall be completed" within 180 days after the filing of the application.  8 USC §§ 1158(d)(5)(A)(ii)(iii).

51.     Because the duty to adjudicate the pending application for asylum is nondiscretionary, it is subject to the APA's mandate that it be performed within a reasonable time. *See* 5 U.S.C. § 555(b).  Thus, Respondents have a duty to adjudicate Ms. Vasquez's asylum application and have failed to perform this duty within the statutory 180-day deadline, and certainly not within a reasonable time thereafter.

52.     When the LIFO policy was implemented by USCIS in January 2018, Ms. Vasquez's asylum application had already been placed in the backlog. After the LIFO policy was implemented, USCIS stopped making progress on backlogged cases. This has effectively ensured that the adjudication of her application is unreasonably and perhaps indefinitely delayed.

53.     The seven-year delay was exacerbated by the imposition of the new LIFO policy for processing asylum applications.  By prioritizing cases pending for less than 21 days over all previously filed cases, Respondents have effectively created a permanent backlog of cases, perpetually delaying the scheduling and adjudication of Ms. Vasquez's application for asylum. Asylum applications filed before January 28, 2018, including Ms. Vasquez's application, are likely

to continue languishing in a state of permanent delay that grows more unreasonable by the day. The effect of the policy is tantamount to a refusal by USCIS to adjudicate the application at all. The delay caused by this policy is manifestly unreasonable.

### Third Claim for Relief: Administrative Procedure Act

***Respondents' "Last-in, first-out" policy is a violation of the Administrative Procedure Act's prohibition on arbitrary, capricious, and unlawful government action***

54.    Petitioner realleges and incorporates by reference paragraphs 1 through 53 of this Complaint as if fully stated herein.

55.    Petitioner has been aggrieved by agency action under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*. The agency's action in implementing the LIFO policy is an agency action that is arbitrary, capricious, and otherwise not in accordance with law.  As a result of the agency action, Petitioner is left in "legal limbo," without legal status and uncertain of her future in the United States because Respondents have reprioritized adjudication of her affirmative asylum application, ensuring her application will never be adjudicated.

56.    In order to satisfy the APA, an agency's action must be "reasonable and reasonably explained." *Mfrs. Ry. Co. v. Surface Transp. Bd*., 676 F.3d 1094, 1096 (D.C. Cir. 2012). When the LIFO policy was implemented by USCIS in January 2018, USCIS described the policy as an "attempt to stem the growth of the agency's backlog."  However, after the LIFO policy was implemented, USCIS stopped making progress on backlogged cases and the backlog has only increased since its implementation.  *See* Footnote 1, *supra*.

57.    In January 2018 when the policy was set in place, USCIS faced a backlog of 311,000 asylum cases.  The backlog of affirmative asylum applications is now above 430,000 cases.  *Id*.  Thus, the LIFO policy has only exacerbated the problem that it was implemented to solve.

58.     Upon information and belief, the press release announcing the implementation of the LIFO policy is the only notification that was ever provided by DHS.  No public comment period or formal rulemaking was conducted before adopting the policy.

59.     The LIFO policy is arbitrary for several reasons.  First, temporal proximity to claimed past persecution is highly relevant in adjudicating asylum claims.  For example, the recency of alleged harm makes a fear of future persecution that much more likely to be "well-founded."  By simply refusing to adjudicate hundreds of thousands of asylum claims under the LIFO policy, USCIS can effectively "moot" many viable applications—or at least provide a basis for denial because the persecution occurred years prior.

60.     Second, evidentiary issues are implicated by the LIFO policy.  For example, applicants bear the burden of proof in asylum claims and must support their Applications with testimony and evidence.  *See* 8 U.S.C. § 1158(b)(2)(B)(ii) ("Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.").  Thus, the longer adjudication of an asylum application is delayed, the harder it becomes to present evidence or witnesses, and the less likely USCIS will ultimately grant relief—even in a meritorious case.

61.     For these reasons, USCIS's policy allows the agency to "deny through delay" by allowing legitimate claims for asylum to grow stale and then deny them because it has been years since any harm was committed.

62.     Third, in changing its policy from a "First-in, first-out" to a "Last-in, first-out" policy, USCIS failed to consider the effects of the policy on individuals awaiting adjudication of their asylum applications, such as Ms. Vasquez.  *See e.g.*, ¶ 28-33, *supra*; *cf. Dep't of Homeland*

14

*Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020) (determining that DHS failed to consider reliance interests in rescinding DACA).

63.     Ms. Vasquez has been harmed by the USCIS policy, which has placed her asylum application in a perpetual backlog. Ms. Vasquez remains in uncertain legal status and is unable to adequately plan for her future, obtain permanent residency or other non-immigration benefits. She lives in fear of her future and the uncertainty of her situation has taken a toll on her health and welfare.

64.     Finally, as the asylum application backlog continues to grow, Ms. Vasquez's Application is likely to remain in a state of permanent delay that grows more unreasonable by the day.

### Fourth Claim for Relief: Mandamus

*Respondents owe Petitioner a non-discretionary duty to adjudicate her asylum claim under within a reasonable period of time and may be compelled to do so by a writ of mandamus*

65.     Petitioner realleges and incorporates by reference paragraphs 1 through 64 of this Complaint as if fully stated herein.

66.     Respondents have a mandatory duty to administer and enforce the INA, including following 8 U.S.C. § 1158 regarding asylum claim adjudication.  By placing Petitioner's Application in a backlog and implementing the LIFO policy, Respondents have delayed the review of her application for an unreasonable, and perhaps indefinite, period. Under Mandamus, where the government or a government agency has a non-discretionary duty to perform an action—such as adjudicating an application for asylum—the Court may compel the government to honor its duty if it fails to do so within a reasonable time.

67.     Although they do have authority to decide the merits of Ms. Vasquez's application, Respondents do not have any discretion to refuse to adjudicate an application. *See Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 546 (S.D.N.Y. 2008).

68.     Moreover, Ms. Vasquez does not have any administrative or other remedies available to compel Respondents to do their duty, but for this federal action.  Additionally, where there is an "indefinite timeframe for administrative action," the Petitioner need not exhaust administrative remedies.  *Iddir v. INS*, 301 F.3d 492, 498–99 (7th Cir. 2002).

69.     Ms. Vasquez has a clear right to the relief requested, namely, that her application be adjudicated by the agency without undue delay, and she falls within the "zone of interests" of the INA. *See Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 150 (1970).  First, she has a clear right to apply for asylum under the INA. *See Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 553 (9th Cir. 1990).  In addition, courts have found that where there is a right to apply for an immigration benefit, the applicant has a right to receive a decision. *See Iddir*, 301 F.3d at 500 (holding that an applicant for permanent residency has a right to have their application adjudicated).

70.     Since Respondents have a mandatory duty to adjudicate Ms. Vasquez's asylum application, and because she has no other remedy available to compel Respondents to adjudicate her application, the Court should issue a writ of mandamus compelling Respondents to adjudicate her application.

## PRAYER FOR RELIEF

WHEREFORE, and in light of the foregoing, Petitioner prays that this Court:

1.     Assume jurisdiction over this matter;

2.      Declare that USCIS's LIFO policy, as well as Respondents' other acts and omissions alleged in this Petition, violate Article 34 of the 1951 Convention, the Immigration and Nationality Act, and the Administrative Procedure Act, and as such enjoin the LIFO policy as to Petitioner;

3.      Compel Respondents to perform their duty or duties to complete processing, including, but not limited to, immigration security checks, interviewing Ms. Vasquez, and then adjudicate Ms. Vasquez's Form I-589 Application for Asylum within 60 days;

4.      Award Petitioner attorney's fees and costs pursuant to 28 U.S.C. § 2412 and any other applicable statutory, common law, or constitutional provision; and

5.      Grant such further relief as the Court deems just and proper.


Respectfully submitted,

/S/ Joseph Moravec
Joseph Moravec, Esq. (21691)
Blessinger Legal PLLC
7389 Lee Highway Suite 320
Falls Church, VA 22042
(703) 738-4248

17